Good morning, Counsel. Good morning, and may it please the Court. My name is Stephanie Adraktis, and I represent Mack West, the petitioner and appellant. I'd like to reserve two minutes for rebuttal. Mr. West has a very long history of mental illness, chronic paranoid schizophrenia, and brain damage. This all began when he was 10 years old for the brain injury, and then he developed psychotic symptoms as a teenager. His 2006 guilty pleas to second-degree murder and robbery should be vacated because at the time of the pleas, there was a bona fide doubt as to his mental competency. The trial court violated his right to procedural due process when it failed to conduct. Is that our standard of review, if there's a bona fide doubt? Yes, Your Honor. In the Supreme Court cases, Pate and Droop, that are cited in the brief and in the Maxwell case out of the Ninth Circuit, the standard for determining when a trial court should conduct a competency inquiry is whether there is a bona fide reasonable doubt as to the person's competency, and the standard is would a reasonable judge in that situation assess the standard as to whether an inquiry should be conducted? Yes. And it was conducted three times? In this case, beginning in 1999, yes, there were. When is enough enough? Well, Your Honor, unfortunately, a person's mental competency, especially when it is as complex as in this case, is often fluid. So that's why in the Droop case, the United States Supreme Court emphasized that even when a court has done an inquiry into competency, the trial court must be alert to changes in the mental condition of a defendant that might make further inquiry necessary. And here we have a very long history of this case. Not only the case starting in 1999, when the crimes were committed, but before that, starting in 1994, when Mr. West's paranoid schizophrenia was first diagnosed. We know from the doctor's reports that are in the record that he was first diagnosed with that disease years before the crime in this case was committed. And I think that informs our understanding of his behavior, because there was always the suspicion, and you see it in the doctor's reports, that he's faking symptoms in order to avoid a trial. And that is there several times expressed by different experts. But we also know that his diagnosis of paranoid schizophrenia occurred years before the incidents to be tried had occurred, and that he had again and again been diagnosed with schizophrenia by various doctors. He sought help for his condition, and there was also documentation of his brain injury. So he's not faking those things, and that's something that we also know. Roberts, isn't the standard review, though, in this case, as you set out, but then viewed through the EDPA lens? Yes, Your Honor. But as discussed in the brief, there's an important exception to that, that the United States has discussed in Panetti, and is also recognized in DEC and other cases in this Court, that when the State court does not apply the Federal constitutional standard in handling the claim, then review is de novo and not through the AEDP lens. And in this case, the court of appeal viewed the competency question, the issue of whether or not a hearing should be held, using the wrong standard. They said, Mr. West's counsel did not raise substantial evidence of incompetency, and so there was no need to hold a hearing. That's actually the standard that should be applied at the conclusion of a competency inquiry, whether or not he had met his burden of proof. But the standard, the Federal constitutional standard for whether a hearing should be held at all is whether there's a bona fide or reasonable doubt, as we discussed earlier. So the — because the State court did not apply the correct standard, even under actually its own law, they didn't apply the correct standard to the constitutional issue, this Court's review should be de novo and not under the deferential AEDPA standard. I just want to confirm that the argument you just made was also made to the district court. Mr. West — the argument was not made the same way in the district court. Mr. West had represented himself through nearly all of the district court proceedings. And actually, the procedural history in the district court is quite complicated because of the number of histories of amendments and also whether or not the trial — the district court was going to consider a fourth amended petition. So the issue was not raised in that way. But this Court, on review of the district court decision, can and should look to whether or not the State court applied the Federal constitutional standard. And if it did not, the Court can review the issue de novo. Under any standard, the trial court violated Mr. West's right to procedural due process, because we know the last competency inquiry that had occurred in this case was in December 2004, when the trial court did hold a competency hearing and considered expert reports. But then in 2005 and again in 2006, Mr. West, through different trial lawyers, asked the Court to conduct an additional inquiry into his competency. And there was bona fide and reasonable doubt as to his competency. Mr. West had had a history of prior suicide attempts, one of them in 1998. Alito, there certainly wasn't any doubt in the trial court's mind, correct? The trial court made a determination on the ultimate issue of competency. It had a couple of times, as the Court has pointed out, because the issue is reviewed, we should say de novo, in the trial court every time there's a suspension of proceedings and the person's competency is at issue. The other findings of competency essentially don't matter at that point. Let me tease this out for you just a bit. Let's say that you were granted a fourth competency hearing and it ends up exactly where the third ended up. So now you've had a fourth. You appeal again and basically, under essentially the same set of facts, say you have a disruptive defendant who the Court has found to be disruptive and deliberately so. As I said before, where does this end? Well, Your Honor, at the end of the second, I spot you, you have a very strong argument, or the third strong argument. Now, this is the fourth. Your Honor, there was a substantial change in the third. Like Zeno's paradox. You never get there because you've always got to have another competency hearing as long as it doesn't agree with the defendant's view of things. Your Honor, I think it sounds like what the issue the Court's raising is would this have gone on in perpetuity every time they tried to move the case forward, he would have raised an issue as to his competency. Maybe that's the case. I mean, one of the things that comes out in the record is that Mr. West's fluctuating mental condition was due in some degree to the fact that he was allowed to refuse his antipsychotic medication while he was in the jail. And if he was in a mental hospital, you can't — he couldn't do that. But since he was being held in the jail prior to trial, that was one of the aggravating situations. The trial court could have done something to address that in the sense that they could have obtained authorization to medicate him prior to trial against his will. There were — there are remedies to move the case forward and restore his competency at the same time. The remedy was not to throw up, you know, his hands, essentially, the judge, and say, he's just going to keep raising this, I'm just not going to hold any more hearings, because we do have a Federal due process right only to be tried when competent. And so although this was clearly a difficult and frustrating situation and there had been many evaluations, the answer was not to refuse to hold a hearing. I'm running out of time. Well, you still have a minute and 44 seconds. Thank you, Your Honor. Thank you. Thank you, Your Honors. I may please the Court. This Court should affirm the district court judgment below. The district court succinctly found that the State court's conclusions were supported by the record. As Justice — as Judge Lucero points out, when is enough enough? The fact that the Petitioner had three full competency hearings before his request for a fourth distinguishes this case from Maxwell v. Rowe, a case my opponent says is on all fours here. As to Judge Owen's question about deference, the parties have litigated this. We point out that the California court of appeal cited the relevant California statutes as well as other cases, including Leonard, Dunkel, Ramos, and U.S. v. Loyola Dominguez, which in turn cite and rely on the controlling cases, Pate, Dunkel, Drope, and Medina v. California. We disagree with opposing counsel. Deference is due. A deference is due in this case. What we have is an actual factual finding by the trial court, quote, finding, behavior over the last week is just more of the same, feigning mental incompetence for purposes of delaying the proceedings. Counsel, why wasn't that an unreasonable determination of facts in view of the history that he had been declared incompetent twice before? Oh, yes. There's a very, a very extensive history of mental incompetency, but also a history of psychologists finding, suggesting malingering. This is the same trial judge. My, my, pardon me. I didn't mean to. That's all right. Go ahead. This is the same trial judge. The proceedings in this county, in this court, occurred five and a half years into the filing of the complaint. So over the five and a half year period, the defendant had been found incompetent twice and sent to a Tascadero State Hospital and returned. Three, three full evidentiary hearings on competency occurred. This is the same trial judge that had considered this case over one and a half years of that five and a half year period and had presided over the very same third competency, competency hearing. So the same trial judge who had this case for a year and a half and, and had observed the defendant's actions and ordered him removed from the courtroom for various reasons, was in perfect, was in a perfect place to make that factual finding. That in this particular case, when this, when this request for a fourth competency hearing occurred, over this last week, the same, more of the same, feigning incompetency for purposes of delaying the proceedings. We argue that under 2254e1, that's a factual finding that must be presumed correct. Unless I can answer more particular questions from this panel, I believe I, I've been able to. Roberts. Yes, sir. The record of the examination of 2016, the actual report, is that in the record? 2016, proceedings occurred in. I'm sorry. Did I say 16? Yes. I meant to say 6. I'm sorry. 2006. If you could be more, more specific, Your Honor. Well, how can I be more specific than that? Is the 2006 report upon which the competency determination was made in the record? Yes. Yes. Okay. Yes. The, the full record of the third competency proceeding is in the record. Yes. Thank you. We'll be submitting the matter on the, on the. Counsel, I, I was just curious about your, your assertion that the findings made by the State court shall be presumed to be correct. That was, that's under e1. Yes, ma'am. Are we there? Are we in the e1 realm? I'm referring to the specific finding made in excerpts of record, page 48, where the trial court stated that he had been presiding over proceedings over the past week, and over this past week, this, this person's attempts at, found essentially the defendant was delaying proceedings. Right. But you said we have to presume it correct, and that's found in e1 of 2016. I'm referring to the e1 of 2254. And I ask you, are we in e1 territory, or we are in d territory? I think for that page 48 finding, that's an e1 finding. How? Because it's, it's, it's. e1 is when, once we get to DeNovo review. No. Yes. Have you read Murray v. State by Judge Bybee? He explains that all very, very clearly. At any rate, under d1, that's a factual finding as well. Yes. It's, yes, we give deference to it, but no presumption. Very well. All right. Thank you, counsel. Submitted, Your Honor. Thank you. All right. I'd like to quickly address some of the things that just came up during Respondent's argument. The court is correct. The factual findings that led the trial court to, or the State court to decline a hearing are reviewed under d2, which is also in the Maxwell case that's cited in the briefs. Counsel states there were three full competency hearings. Actually, there was one full competency hearing in this case with testimony of experts. The first inquiry into competency, the evidence of that is not in the record except as to the extent it's referred to in the expert reports. It appeared that Mr. West was somewhat summarily found incompetent in 1999 and sent to a State hospital. The second inquiry that you'll see in the record, there was a consideration of reports of experts, but not a full evidentiary hearing. How does that cut? Does that cut in your favor, or does that? It does, Your Honor, because this is not as extensive of an inquiry as the other. I understand, but I mean in terms of responsibility and burdens of inserting these into the record. Yes. A factor is the defendant's mental health history as to whether or not the court or the trial court made a mistake. This history shows, as the Court pointed out during counsel's argument, that Mr. West had been found incompetent twice, and it did not appear to have been a contested issue initially. So we know that he's seriously mentally ill. We know that he also fakes symptoms at times, and the doctors who evaluated him said that made him particularly difficult to evaluate. And that weighs in favor of another hearing, particularly prior to taking a plea. Wait a minute. There was a difficulty – there was no difficulty in evaluating him incompetent the first time. Initially. And he went to the State hospital at that point. Yes. We know that. He went in 1999. And then at some point he recovered enough to pass a second competency hearing. Yes. And one thing to note that's in the materials, when the State hospital staff sent Mr. West back to court in order to be adjudicated, they said, we should be cognizant here of a speedy trial. And I think what they were indicating was this person is vulnerable to decompensation, especially – and the experts talked about this, too – in the conditions in the jail. These people do much better as mental health patients in a hospital. And so when he was restored to competency and sent back to jail, there was this indication in the report to please hurry this up, because he could decompensate. And that informs the – our evaluation of the entire situation. We have somebody who's in and out of the jail and mostly in jail over all these years. So that was a triggering condition that the trial court should have considered. You would agree that the trial court's in the best position to evaluate this issue, right? In a better position than we are. Yes. But we also – in looking at the history here, the trial court declined to hold a hearing in February of 2006 when the last inquiry had been in December 2004, the entire time Mr. West had been in the jail. So he's not in a good situation for somebody with his brain injury and with his paranoid schizophrenia. And having that much time pass without having an expert evaluation was arguably not wise, especially when trial counsel is saying he's attempting suicide, he's got a lot of problems, he's bizarre, I can't consult with him. Those things should have led the trial court to conduct another inquiry. I'm sorry, I'm out of time. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar, Gartner v. Federal Express Corporation, has been submitted on the briefs. The next case on calendar for argument is Lean v. Thomas. Thank you.
judges: Lucero, Rawlinson, Owens